UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| : | Case: 1:20-CR-00015 |
| v. : | |
| : | |
| AWETT TEDLA : | HON. CARL J. NICHOLS |
| : | |
| Defendant. : | |
| : | |
| : | |

## SUPPLEMENTAL GOVERNMENT MEMORANDUM IN AID OF SENTENCING

The United States of America respectfully submits this memorandum in aid of sentencing for Awett Tedla ("the defendant"). Over a six-year period, the defendant defrauded the IRS through returns she prepared for clients, submitting at least $509,000 in false claims and causing about $85,503 in actual loss. Despite her years of tax preparation experience, she also underreported her own income by about $512,570 between 2013 through 2016. Therefore, the government submits this supplemental memorandum recommending the Court impose a Guidelines sentence of 33 to 41 months' imprisonment with a three-year period of supervised release. Such a sentence would be commensurate with the seriousness of the offense, factors identified in the Presentence Investigation Report ("PSR"), and the Section 3553(a) factors. In support of this motion, and to assist the Court in fashioning an appropriate sentence, the Government submits this memorandum in aid of sentencing.

I.  BACKGROUND

The defendant was a tax preparer who owned and managed Speedy Tax Services, LLC from January 1999 to May 2017, serving clients through various locations in the

1

District of Columbia and Maryland. (PSR ¶ 116). But instead of marshalling her almost two-decades of tax preparation experience to maintain an honest practice, the defendant exploited her training and experience to defraud the IRS. She did so by orchestrating the preparation of false Forms 1040, U.S. Individual Income Tax Returns, that fraudulently claimed tax refunds based on fictitious income amounts that the unemployed co-conspirators did not actually earn. (PSR ¶ 23).

Those false returns exploited the Earned Income Tax Credit (EITC) by listing fictitious business expenses, gross receipts from nonexistent hair braiding or babysitting businesses, and false dependents. The EITC is a refundable tax credit available to certain low-income taxpayers. Unlike classic tax refund claims based on W-2 wages, the EITC allows a tax refund even if little or no tax withholdings were made that year. In other words, a taxpayer does not need to submit a Form W-2, Wage and Tax Statement, in order to claim income triggering the EITC. Moreover, the refund amount is in part determined by the number of dependents. Therefore, with no need for employer verification through a Form W-2, unscrupulous tax return preparers can falsify taxpayers' reported income and number of dependents to meet EITC income guidelines, claim the maximum credit available, and trigger an inflated refund.

Here, the defendant did just that. For a given false return, the defendant would list fabricated income from a fictitious hair-braiding or babysitting business on a Schedule C, Profit or Loss from Business, form attached to the Form 1040. As a biproduct, the taxpayer would incur a self-employment tax liability based on that income. On that same tax return, the taxpayer can claim dependents, which can increase the EITC amount based on the number of dependents. For each dependent, the taxpayer generally reports the dependent's

name, social security number, birthyear, relationship, and duration the dependent lived with the filer in the U.S. The EITC amount would exceed the self-employment tax liability, and the difference would be issued to the taxpayer as a refund.

Between 2012 and 2016, the defendant followed this modus operandi in causing the filing of at least twenty-two false Forms 1040 with the IRS, fraudulently claiming refunds ranging between $1,914 and $8,165, with a total attempted criminal tax loss of $509,160.

The defendant didn't orchestrate her scheme in a vacuum, but conspired with Anthony Ferguson to obtain information of the taxpayers on whose behalf she'd file false returns. Ferguson pleaded guilty to conspiracy to defraud the United States, in violation of 18 U.S.C. § 286; wire fraud, in violation of 18 U.S.C. § 1343; aggravated identity theft, in violation of 18 U.S.C. § 1028A; and false personation, in violation of 18 U.S.C. § 912. (PSR ¶ 41). Afterwards, Ferguson testified before the grand jury that the defendant paid him $50 for each taxpayer. Ferguson would provide the name, address, date of birth, social security number, and dependent information for each individual agreeing to have a false return filed on his or her behalf. These were typically low-income, unemployed individuals for whom the defendant would fabricate Schedule C income to trigger the EITC. After filing the false tax return—which often involved having Ferguson fraudulently sign on the taxpayer's behalf— the defendant would load the tax refund into a prepaid card she'd hand off to Ferguson, and ultimately, the filer. And while the taxpayer would receive a copy of the tax return, the portion indicating the total tax refund wouldn't be included. Thus, Tedla was at liberty to divert a portion of each tax refund away from a client's prepaid card and towards her pocket.

Finally, the defendant's tax misconduct extended to her own individual income tax returns. For tax years 2013 through 2016, the defendant filed her Forms 1040 underreporting

income from Speedy Tax and evading an additional tax due and owing. She did so by transferring gross receipts from her business bank accounts to her personal bank accounts, or using business account funds towards her personal use, and then failing to report these transfers and personal expenditures as income on her individual income tax returns. The relevant figures are as follows:

|  | **2013** | **2014** | **2015** | **2016** | **Total** |
|---|---|---|---|---|---|
| **Unreported Gross Receipts** | $54,444 | $98,094 | $117,310 | $242,722 | $512,570 |
| **Tax Loss** | $18,889 | $34,834 | $37,449 | $80,362 | **$171,534** |

The defendant listed her Speedy Tax employee as the paid preparer for her 2013 and 2014 Form 1040, despite preparing and filing them herself. (PSR ¶¶ 37-38).

On January 16, 2020, a grand jury returned an indictment charging the defendant with one count of conspiracy to file false claims, in violation of 18 U.S.C. § 286; two counts of wire fraud, in violation of 18 U.S.C. § 1343; three counts of tax evasion, in violation of 26 U.S.C. § 7201; two counts of aggravated identity theft and aiding and abetting, in violation of 18 U.S.C. § 1028A and 2; and four counts of aiding and assisting in the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2).

On March 31, 2023, the defendant pled guilty to one count each of false claims, wire fraud, tax evasion, and aggravated identity theft.

On November 20, 2023, the parties filed a plea agreement addendum which indicates the government does not object to the defendant's withdrawal of her guilty plea as to Count Five of the Indictment, Aggravated Identity Theft, in violation of 18 USC § 1028A. (PSR ¶ 20a). The government will not pursue further charges on the submitted Statement of Offense,

including 18 USC § 1028A. In exchange for the government's agreement to the defendant's withdrawal of her guilty plea on Count Five, the defendant agrees not to challenge her guilty plea to any other counts of the Indictment or the validity of the plea agreement. All remaining terms and conditions of the plea agreement dated December 12, 2022 and entered before the Court on March 31, 2023, remain the same.

## II. SENTENCING CALCULATION

The United States Sentencing Guidelines are not mandatory. *United States v. Booker*, 542 U.S. 220 (2005). The Supreme Court has made clear, however, that even though the Guidelines are advisory, they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). Thus, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id*. at 49.

Relying upon terms of the parties' plea agreement entered on March 31, 2023 (omitting the defendant's guilty plea to Count 5, 1028A), the defendant's offense level remains 22, based on the following:

- Count 1 (18 U.S.C. § 286)

    - Base Offense Level: 6 (U.S.S.G. § 2B1.1(2))
    - + 10 for loss amount of $171,534 (U.S.S.G. § 2B1.1(b)(1)(F))
    - + 2 for at least 10 victims (U.S.S.G. § 2B1.1(b)(2)(A)(i))
    - + 2 because the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property (U.S.S.G. § 2B1.1(b)(4))
    - + 2 because the offense involved unlawful use of identification (U.S.S.G. § 2B1.1(b)(11))
    - <u>Total Offense Level</u>: 22

- Count 3 (18 U.S.C. § 1343)

    - Base Offense Level: 7 (U.S.S.G. § 2B1.1(a)(1))
    - + 10 for loss amount of $171,534 (U.S.S.G. § 2B1.1(b)(1)(F))
    - + 2 for at least 10 victims (U.S.S.G. § 2B1.1(b)(2)(A)(i))
    - + 2 because the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property (U.S.S.G. § 2B1.1(b)(4))
    - + 2 because the offense involved unlawful use of identification (U.S.S.G. § 2B1.1(b)(11))
    - <u>Total Offense Level</u>: 23

- Count 8 (26 U.S.C. § 7201)

    - Base Offense Level: 16 for tax loss of $171,534 (U.S.S.G. §§ 2T1.1(a)(1) & 2T4.1(F))
    - + 2 because of failure to identify over $10,000 in proceeds of criminal activity (U.S.S.G. § 2T1.1(b)(1))
    - + 2 for sophisticated means (U.S.S.G. § 2T1.1(b)(2))
    - <u>Total Offense Level</u>: 20

- Grouping (U.S.S.G. § 3D1.1(a)):

    - Group 1: Counts 1 (18 U.S.C. § 286), 3 (18 U.S.C. § 1343)
        - Highest offense level: 23
    - Group 2: Count 8 (26 U.S.C. § 7201)
        - Highest offense level: 20

- **Adjusted Offense level**: 25 (U.S.S.G. §§ 3D1.1(a)(3) & 3D1.4)

- **Zero-Point Offender Reduction**: 23 (§ 4C1.1(a), (b))

- **Final Offense Level after acceptance**: 20 (33-41 months, with Crim. Hist. Cat. I).

(ECF No. 27).

The PSR deviates from the above calculation by adding a 3-point enhancement under U.S.S.G. § 3B1.3 to Count 3 (18 U.S.C. § 1343) because of the defendant's role in the offense, but that was not part of the original plea agreement between the parties. (PSR ¶ 67; ECF No. 27).

6

**III.    3553(a) Factors**

The Court is required to consider the factors laid out in 18 U.S.C. § 3553(a) in imposing a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in that statute.  Those factors call for a sentence within the Guidelines range, as recommended by the government, because of the need to preserve the integrity of the nation's self-reporting tax system, which necessitates that the relatively few criminals who are caught undermining and exploiting this system must be punished to deter others; nature and circumstances of the offense; and the consistency between a Guidelines sentence and those imposed on others for similar conduct.

> **A. The recommended sentence is necessary to afford adequate deterrence to criminal conduct.**

In criminal tax cases, the paramount consideration for the Court at sentencing is "the need to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(3).  For tax crimes, in particular, a Guidelines sentence is necessary to promote general deterrence because the U.S. tax system relies on honest self-reporting and tax crimes are under-prosecuted compared to the frequency of offenses.  The introductory commentary to the Guidelines for federal tax offenses emphasizes the need for sentencing courts to consider deterrence when imposing a sentence on tax offenders:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

USSG, Ch. 2, pt. T, intro. cmt. (2021).

7

The nature of our country's income tax system underscores the importance of general deterrence in sentencing tax crimes. Our tax system relies on taxpayers annually to accurately calculate, report, and pay their tax liabilities every year. With 189,448,392 income tax returns received by the IRS in fiscal year 2022, the IRS simply cannot, and does not, review all tax returns for accuracy. 2022 IRS Data Book, Table 2.[1] And due to the sheer numbers involved, only a small portion are pursued criminally – the government initiated only 1,966 investigations of tax crimes related to non-narcotics financial or tax crimes in FY 2022. *Id*. at Table 24. Thus, "[g]iven the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses…the [Sentencing] Commission's focus on incarceration as a means of third-party deterrence is wise." *United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2010).

While this system can be exploited by tax cheats who want to underreport and underpay their own tax liabilities, it is similarly vulnerable to fraudsters, like this defendant, who pepper the IRS with false claims to steal money from the IRS. To preserve the integrity of the nation's self-reporting tax system, the relatively few criminals who are caught undermining and exploiting this system must be punished to deter those tempted to do the same. *See United States v. Cutler*, 520 F.3d 136, 163 (2d Cir. 2008) (finding below-Guidelines sentence substantively unreasonable because "the tax offenses of which [the defendant] was convicted are the type of offense for which the length of prison term is especially related to the need for deterrence."). Those who voluntarily comply with their tax

---

[1] Available at www.irs.gov/pub/irs-pdf/p55b.pdf.

obligations need to know that the tax laws are enforced, and those who, like the defendant, choose to violate the tax laws need to know that they will be punished.

The defendant's conduct calls for a sentence geared toward general deterrence because it was part of a multi-member scheme to file fraudulent tax returns to generate unearned refunds. The defendant fueled a scheme that involved dozens of individuals virtually selling their personally identifiable information to fraudulently trigger IRS refunds. In fact, this scheme might have gone undetected but not for co-conspirator Ferguson's daughter's serendipitous involvement. In March of 2016, co-conspirator Ferguson's daughter brought a bag belonging to Ferguson to the IRS Taxpayer Assistance Center. In that bag, the IRS found a notepad with handwritten names and about 65 social security numbers, as well as three printed copies of Forms 1040 electronically filed by Speedy Tax. That bag also contained two cellphones, at least one of which contained a call log showing communication between co-conspirator Ferguson and the defendant. It is entirely possible that given the IRS's reliance on the honesty of taxpayer-filers, the defendant's conduct would have remained uncovered to this day had the IRS never received co-conspirator Ferguson's bag linking his scheme to the defendant.

### B. The nature and circumstances of the offense warrant a Guidelines sentence.

The defendant was in the business of preparing other people's tax returns since 1999, and she could have maintained a tax preparation practice using lawful means. Instead, she used her expertise to carry out her scheme, which appears to have involved vulnerable, low-income individuals hoping to make a quick buck at the U.S. Treasury's expense. Ironically, she did so while exploiting the EITC, a program designed to financially assist low-income earners with children.

The defendant's expertise shined through her scheme: she didn't merely throw in a false line item on a given tax return, but instead navigated the intricacies of the EITC program to include the necessary information. Generally speaking, a person needs to have both income and dependents to qualify for the credit. In other words, to obtain a refund under the EITC, it's not enough that a filer claims a dependent. The filer's dependent claim has to include a genuine set of personally identifiable information, including the dependent's social security number. And the filer must have claimed income on the Form 1040 that is further corroborated by an attached Schedule C. She worked with co-conspirator Ferguson to obtain genuine personally identifiable information to fraudulently list on false returns, fueling Ferguson's scheme in a mutually beneficial manner.

### C. A Guidelines sentence of imprisonment would avoid unwarranted sentencing disparities.

The Sentencing Guidelines reflect the consensus that those convicted of economic crimes should not be able to avoid incarceration, even where such crimes constitute a defendant's first offense. The legislative history of the Sentencing Reform Act of 1984, which created the United States Sentencing Commission, made clear that one of the Act's goals was to rectify the serious problem in the criminal justice system that white-collar offenders were not being adequately punished. *See* S. Rep. No. 98-225, at 77 (1983) ("[S]ome major offenders, particularly white-collar offenders . . . frequently do not receive sentences that reflect the seriousness of their offenses.").

The Guidelines range reflects the seriousness of the offense, promotes respect for law, and provides for just punishment in this case. Anchoring the sentence to the Guideline range also serves the vital goal of uniformity and fairness in sentencing. To be sure, "[i]n accord

with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).  Nevertheless, it remains the case that "the Commission fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id*. at 108-09 (internal quotation marks omitted).  Thus, "in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Id*. at 109 (internal quotation marks omitted).

Section 3553(a)(7) states that the Court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  A Guidelines sentence would be consistent with those imposed on others convicted at trial for similar conduct in courts throughout the country.  *See United States v. Roosevelt Fernandez*, 1:12-cr-10075 (D. Mass. Aug. 19, 2013) (tax preparer who pled guilty to 11 counts of preparing false returns and 2 counts of aggravated identity theft, causing a tax loss of about $130,000, sentenced to within-guidelines term of 42 months' imprisonment); *United States v. David Patterson*, 2:18-cr-00264 (D.N.J. Dec. 16, 2019) (within-Guidelines sentence of 29 months' imprisonment, according to 2016 USSG Sentencing Table, where tax preparer falsified clients' medical and dental expenses, gifts to charity, and unreimbursed employee expenses, causing tax loss of about $314,225); *United States v. Charese Johnson*, 1:18-cr-00388-RDM (D.D.C. Feb. 14, 2022) (three years' imprisonment where accountant filed false returns on behalf of clients, attempting to defraud IRS of $6.6 million, but causing no actual payouts and standing to make no pecuniary gains).

**D. Restitution**

The IRS suffered a total loss of $85,503 as a result of the fraudulent tax returns filed by the defendant. Under 18 U.S.C. § 3663A(a)(1), "[T]he court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense . . . ." The defendants should be ordered to pay restitution of $1,056,044 to the IRS. The imposition of restitution, however, should not counter the defendants' term of imprisonment. *See, e.g., United States v. Muffelman*, 470 F.3d 33, 40 (1st Cir. 2006) ("Restitution is desirable but so is the deterrence of white-collar crime (of central concern to Congress), the minimization of discrepancies between white-and-blue-collar offenses, and limits on the ability of those with money or earning potential to buy their way out of jail.") (citation omitted).

The Court should affirmatively order that the full amount of restitution ordered is due and payable immediately and that any payment schedule the Court orders is a minimum obligation that does not preclude the government's collection of the full amount. Title 18, Section 3664(f)(2), requires the court to create a payment schedule for restitution if a defendant cannot pay the full amount immediately. This provision ensures that a defendant who cannot pay restitution in full immediately must make at least some periodic payments toward his restitution debt. But the defendant should remain liable for the full amount of restitution this Court has ordered, and affirmatively making the restitution due and payable immediately ensures that will happen. This approach accords with the statutory scheme, which provides that restitution is due and full immediately unless the court determines otherwise "in the interest of justice." 18 U.S.C. § 3572(d)(1). If the restitution is not affirmatively ordered due and payable immediately, it leaves open an argument by a

defendant that the full amount ordered by this Court cannot be collected by the government if the defendant is compliant with the payment schedule. The government believes this argument is contrary to the statutory scheme but requests that the Court make clear its intent that the full amount of restitution the Court has ordered is due in full immediately and thus can be collected by the government on behalf of the victim(s). Doing so will, for example, permit the government to seize a newly discovered asset or to offset a future tax refund, which will maximize compensation to the IRS of the defendant's crimes.

And for the reasons stated in support of the sentence requested by the government, the Court's affirmatively ordering that the full amount of restitution ordered is due and payable immediately and that any payment schedule the Court orders is a minimum obligation is in the "interest of justice."

## CONCLUSION

For the foregoing reasons, the Court should sentence Awett Tedla to a Guidelines term of imprisonment between 33 and 41 months.

    Respectfully submitted,

    DAVID A. HUBBERT
    Deputy Assistant Attorney General,
    U.S. Department of Justice
    Tax Division

By:    /s/ George Meggali
    GEORGE MEGGALI
    Trial Attorney
    Department of Justice, Tax Division
    P.O. Box 972
    Washington, DC 20044
    (202) 598-5969
    George.Meggali@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1, 2024, a copy of the foregoing document was filed using the Court's CM/ECF system, which will send copies to counsel of record in this matter.

<u>/s/ George Meggali</u>
Trial Attorney